THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL LUTZ, | ) | |
| 10831 Luxberry Dr. | ) | |
| Rockville, MD 20852 | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| LIQUIDITY SERVICES, INC. | ) | |
| 6931 Arlington Road, Suite 200 | ) | |
| Bethesda, MD 20814 | ) | |
| | ) | |
| Defendant. | ) | |

# COMPLAINT

### (Employment Discrimination)

1. Liquidity Services, Inc. (LSI) fired Michael Lutz to foster an image of greater diversity among its senior leadership team, and handed his job to a substantially younger black female employee who was reporting to Lutz prior to the termination. This is not reasoned speculation; LSI CEO William Angrick confessed to this motivation when he informed Lutz of his forced retirement on August 25, 2020.

2. Lutz had been successfully performing all aspects of his position as Vice President, Human Resources for more than eight years, and there was no legitimate reason for his discharge. LSI's termination of Lutz' employment violated 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act.

## JURISDICTION AND VENUE

3. The Court has jurisdiction of Plaintiff's claims under 28 U.S.C. §§ 1331, 1343(a)(4), 42 U.S.C. § 2000e-5(f), and 29 U.S.C. § 626(c).28 U.S.C. § 1331.

4. Venue is proper in this district as Plaintiff was employed in this district and the discriminatory acts by defendant took place there.

## THE PARTIES

5. Plaintiff is a resident of Maryland and a former employee of Defendant.

6. Defendant is a for-profit business headquartered and conducting business within the state of Maryland.  Defendant employed Plaintiff from March 2012 up to the date of his unlawful discharge.  Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964 and the ADEA.

## FACTS

7. Michael Lutz began employment with Defendant LSI in March 2012, after previous employment as an executive for many years in various executive level human resources positions.  LSI hired Lutz to serve as the company's Vice President, Human Resources, pursuant to a written employment agreement.

8. Lutz is a white male who is currently 63 years old.

9. Lutz was the highest-ranking executive within defendant's HR function, and served as a member of the company's executive leadership team.  Since approximately 2017, Novelette Murray served as Vice President of HR Operations, and reported directly to Lutz.  Murray is a black female who is approximately 10 years younger than Lutz.

10. Lutz was an extremely dedicated and effective Vice President of Human Resources; he helped to revamp the LSI leadership team and he oversaw the rebuilding of defendant's HR

function into a highly capable and well-functioning unit.  Lutz' performance over the years was consistently strong, and he earned raises and performance bonuses commensurate with outstanding performance.

11. In his capacity as Vice President, Lutz reported directly to LSI CEO William Angrick.

12. CEO Angrick never notified Lutz of any dissatisfaction with his overall performance.

13. On August 25, 2020, Angrick called Lutz to a meeting and, after initial pleasantries, told Lutz that he wanted Lutz to retire and would promote Novelette Murray to replace him.  Angrick assured Lutz that this action had nothing to do with his performance, but rather was taken to "improve the diversity profile" of the top leadership of the company (which prior to that action, was uniformly white and male).  Angrick told Lutz that he wanted his retirement to be effective by no later than October 2020, but that he would consider keeping him on in some consulting type capacity for a period of time after that.  He complimented Lutz that his performance overall had been "very good," and praised him for grooming Murray to be ready for the top HR position within the company.  He then instructed Lutz to notify Murray of this action.  Angrick ended the meeting by notifying Lutz that they would talk again about a departure date, severance terms and any potential consulting role after Lutz notified Murray of the conversation.

14. Prior to this discussion, Lutz had not announced any interest or plan for immediate retirement.  To the contrary, he had made it known to Angrick that he intended to keep working at least until age 66 and depending on his health and circumstances at that time.  Angrick had no legitimate basis to believe that Lutz was ready to voluntarily retire, and his decision that it was time for Lutz to do so was forced and involuntary.

15. As instructed, Lutz notified Murray of his conversation with Angrick.

16. Lutz also informed LSI General Counsel Mark Shaffer of the actions and comments made to him by Angrick during the August 25 meeting, and his belief that the forced retirement to boost diversity among the leadership was unlawful.

17. In the weeks following the August 25 meeting, LSI through its General Counsel Mark Shaffer, attempted to negotiate a voluntary agreement on Lutz' part to retire, but the parties did not reach agreement.

18. On September 11, 2020 Lutz participated in a meeting of the LSI Board of Directors Compensation Committee.  During the meeting, Angrick notified board members that Lutz would be retiring (disregarding the fact that Lutz had never agreed to do so), and members of the board complimented Lutz on his performance and leadership of the HR function over the past eight years.

19. On September 25, 2020 LSI delivered a letter signed by General Counsel Shaffer and copied to CEO William Angrick notifying him of the termination of his employment, effective immediately.

20. As noted above, Lutz worked pursuant to a written employment agreement, which allowed the company to terminate his employment for cause, and without severance.  Cause was broadly defined to include "recurring violations of material Company rules, regulations, policies, or any material provisions of this Agreement . . . after written notice to the Executive from the Company specifically enumerating all facts and circumstances constituting the violation . . ." LSI never notified Lutz of any breach or violation of his employment agreement; to the contrary, the company admitted in the letter notifying Lutz of his discharge that the termination was "without cause."

21. LSI has not offered any legitimate basis for firing Lutz, and any purported legitimate explanation offered by the company at this point would be nothing more than a pretext for discrimination.

22. The actual motivation for Lutz' termination were the reasons admitted to by Angrick during his August 25, 2020 meeting with Lutz: the company fired Lutz because of his race, gender and age to "improve the diversity profile" of the leadership team by replacing him with a younger African-American woman. This decision discriminated against Lutz because of his race, gender and age.

23. LSI's actions as described herein were taken by the highest-ranking officer of the company (CEO Angrick), and were either malicious or taken in reckless disregard of Lutz' right to be free from employment discrimination. Angrick was also aware of the prohibition on age discrimination, and his decision to fire Lutz and replace him with his younger subordinate after unsuccessfully coercing his retirement amounted to willful age discrimination.

24. LSI's actions have ended Lutz' career, harmed his reputation, inflicted enormous financial harm and caused him significant humiliation, emotional distress and loss of enjoyment of life.

25. Lutz timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and that charge has been pending for more than sixty days. Lutz' claims of age discrimination have been properly exhausted. Lutz is not required to exhaust his claims of race discrimination pursuant to 42 U.S. C. § 1981. Lutz is keeping his claim of gender discrimination pending at the EEOC until such time as it has been filed for more than 180 days, at which point it will be properly exhausted. Plaintiff will then move to amend his claims in this lawsuit to add a claim of gender discrimination in violation of Title VII.

## IV. STATEMENT OF CLAIMS

### Count I: Race Discrimination

26. Plaintiff adopts and incorporates by reference paragraphs 1-25, above.

27. Defendant fired Plaintiff because of his race in violation of 42 U.S.C. § 1981.

28. Defendant's actions were willful, wanton and malicious, and/or taken in reckless disregard of Plaintiff's rights under the law.

### Count II: Age Discrimination

29. Plaintiff adopts and incorporates by reference paragraphs 1-25, above.

30. The decision to fire Plaintiff was also motivated because of his age in violation of the Age Discrimination in Employment Act. Plaintiff's age was a but-for cause of his discharge.

31. This age discrimination was "willful."

## V. REMEDIES SOUGHT

32. WHEREFORE, Plaintiff respectfully requests that the Court issue judgment in his favor and grant him the following relief:

   a. A declaratory judgment that Defendant discriminated against Plaintiff, as alleged herein;

   b. An award of back pay, including without limitation salary, bonuses, stock grants and/or options and other lost benefits due to Defendant's discrimination against Plaintiff;

   c. Reinstatement to his position with Defendant, or to a like and equivalent job, or in the alternative, an award of front pay, to compensate Plaintiff for the financial loss he will continue to suffer;

d. Compensatory and punitive damages in appropriate amounts to be determined by the jury;

e. Liquidated damages for defendant's willful violation of the ADEA;

f. Prejudgment and post judgment interest on all lost compensation and post-judgment interest on any compensatory or punitive damages awards;

g. Reasonable attorneys' fees and costs as allowed by law; and

h. Such other and further relief as to which the Court deems just and warranted.

## VI. JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

/s/
Richard A. Salzman (15840)
HELLER, HURON, CHERTKOF & SALZMAN
1730 M Street, NW, Suite 412
Washington, DC  20036
(202) 293-8090
Fax: (202) 293-7110
ras@hellerhuron.com

*Attorneys for Plaintiff*