**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **MICHAEL LUTZ,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **Civil No.: PWG-21-1229** |
| **LIQUIDITY SERVICES, INC.,** | * | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

In August 2020, Michael Lutz was terminated by his employer, Liquidity Services, Inc. ("LSI"). Compl., ECF No. 1. Mr. Lutz timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and on May 19, 2021, through counsel, he filed this lawsuit against LSI, alleging employment discrimination on the basis of his race (Caucasian), gender (male),[1] and age (63).  *Id.* The complaint was amended in November 2021, asserting three causes of action: (1) Race Discrimination in violation of 42 U.S.C. § 1981; (2) Age Discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*; and (3) Gender Discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* Am. Compl., ECF No. 23. LSI has moved for summary judgment on all claims.  Mot., ECF No. 33. Having reviewed

---

[1]     Workplace gender discrimination generally means that an employee is treated differently or less favorably because of their sex, gender identity, or sexual orientation.  Even though the words "sex" and "gender" have different meanings, laws against discrimination at work often use them interchangeably. Plaintiff has used the term gender in reference to his claim that he was discriminated against because he is a male, so that is the term I use when referencing his claim.

the filings,[2] I find that a hearing is unnecessary in this case. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated herein, Defendant's Motion for Summary Judgment, ECF No. 33, is GRANTED IN PART and DENIED IN PART. Mr. Lutz's claims for race and gender discrimination shall proceed to trial, but his ADEA claim is dismissed.

### BACKGROUND[3]

Liquidity Services, Inc. ("LSI") provides business and government clients with online marketplaces and integrated services for the disposition of surplus assets. Def.'s Stmt. Facts ¶ 1, ECF No. 33-3. LSI became publicly listed on Nasdaq in 2006. *Id.* ¶ 2. Michael Lutz began working for LSI in April 2012 in an executive leadership role as the Vice President of Human Resources, reporting directly to the Chief Executive Officer and Chairman of the Board, William P. Angrick, III. *Id.* ¶¶ 3, 11. Mr. Lutz's initial base salary was $200,000 per year, and he was eligible for an incentive bonus targeted at $80,000 per year based on achievement of identified goals and objectives. Pl.'s Ex. 12, ECF No. 34-13. He was also compensated with LSI stock, subject to vesting. *Id.* Throughout his employment with LSI, Mr. Lutz earned raises and incentive bonuses. *See* Am. Answer ¶ 10, ECF No. 24; Earnings & Bonus Statements, Pl.'s Exs. 17-18, ECF Nos. 34-18, 34-19.

On August 25, 2020, Mr. Angrick had a meeting with Mr. Lutz, during which they discussed Mr. Lutz's employment with LSI. Def.'s Stmt. Facts ¶ 82. Mr. Lutz testified that Mr. Angrick told him, "Mike, I want you to retire. I have a diversity problem. I need to improve the

---

[2]       In addition to the Defendant's summary judgment motion, ECF No. 33, Plaintiff filed a response in opposition, ECF No. 34, and Defendant filed a reply, ECF No. 38, together with a motion to strike Plaintiff's declarations, ECF No. 39, to which Plaintiff responded, ECF No. 40, and Defendant replied, ECF No. 43. The filings also included multiple exhibits.
[3]       Defendant provided a statement of "undisputed" material facts, ECF No. 33-1, to which Plaintiff responded, ECF No. 34-1. A court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

diversity profile of the company. And I need to promote Novelette [Murray] into your job. And I'd like you to stay around until October 1 to – to effect the transition." *Id.* at ¶ 83. Ms. Murray had been identified by Mr. Lutz as his "ready now" successor since 2018.[4] *Id.* at ¶ 21. Ms. Murray is an African American woman who is approximately 8 years younger than Mr. Lutz. *Id.* at ¶¶ 10, 14. During this meeting, Mr. Angrick made no reference to Mr. Lutz's race, age, or sex, nor did he make explicit reference to Ms. Murray's sex or age, although he told Mr. Lutz that he considered Ms. Murray "fully competent to do the job, her race notwithstanding." *Id.* at ¶¶ 84-86. Mr. Angrick offered Mr. Lutz the option to stay on board on a consulting basis. *Id.* at ¶ 123. Mr. Lutz met with Ms. Murray, she agreed to accept the position, and they worked together on the transition plan. *Id.* at ¶¶ 87, 90-93.

Mr. Lutz's retirement and Ms. Murray's prospective appointment were announced to the board on September 11, 2020. *Id.* at ¶ 127. Ms. Murray's appointment and Mr. Lutz's retirement were reported to the public on September 16, 2020, which included a quote from Mr. Angrick stating that Mr. Lutz "built a best-in-class HR function and instituted best practices we will carry forward, including talent development that is aligned with our strategic priorities." SEC Form 8K, Pl.'s Ex. 8, ECF No. 34-9. But on September 25, 2020, Mr. Lutz was terminated "without cause," and Ms. Murray succeeded Mr. Lutz as head of Human Resources on October 1, 2020. Def.'s Stmt. Facts ¶¶ 17, 131; Term. Letter, Pl.'s Ex. 6, ECF No. 34-7.

Mr. Lutz testified that his termination was motivated by LSI's efforts to add diversity to its leadership, which was comprised of all white men at the time. Lutz Dep. 16-25, Pl.'s Ex. 1, ECF No. 34-2;[5] Lutz Decl. ¶ 6, Pl.'s Ex. 13, ECF No. 34-14. Mr. Angrick testified that there was no

---

[4]     "[A] 'ready now' successor means that the person identified 'is ready to take over the role at any time' because the person is 'qualified to take on the role.'" Def.'s Stmt. Facts ¶ 22.

[5]     LSI also provided an excerpt of the Mr. Lutz's deposition. Def.'s Ex. 1-A, ECF No. 33-4.

focus on diversity and denied making the statements about diversity or about retirement at the August 25, 2020 meeting.  Angrick Dep.73-74, Pl.'s Ex. 4, ECF No. 34-5.[6]  Mr. Lutz has provided corroborating evidence of contemporaneous conversations about the meeting, which LSI has moved to strike as inadmissible hearsay.  *See* Tanenbaum Decl., Pl.'s Ex. 5, ECF No. 34-6; Def.'s Mot. Strike, ECF No. 39.  LSI also moved to strike the declaration of Nicholas Rozdilsky, a former LSI executive who was terminated a year after Mr. Lutz.  *See* Rozdilsky Decl., Pl.'s Ex. 11, ECF No. 34-12; Def.'s Mot. Strike.

Although Mr. Lutz was offered a contract to continue as an independent consultant, the parties were not able to agree on terms. Consulting Agreement, Pl.'s Ex. 7, ECF No. 36-2 (SEALED); *see also* Retirement Agreement, Pl.'s Ex. 21, ECF No. 34-22.  Mr. Lutz filed a charge of discrimination with the EEOC, received a notice of right to sue on his Title VII claim, and filed this lawsuit alleging discrimination on the basis of race, age, and gender.  Am. Compl. ¶ 25.  LSI asserts that Mr. Lutz was fired for poor work performance and moves for Mr. Lutz's claims to be summarily dismissed on the basis that he cannot establish a *prima facie* case of discrimination because he cannot show he was qualified for the position.  Mot. 1.  LSI contends that Mr. Lutz has raised no genuine issues of material fact to show that his termination was a pretext to discrimination. *Id.*

## STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to

---

[6]      LSI also provided an excerpt of Mr. Angrick's deposition.  Def.'s Ex. 1-B, ECF No. 33-5.

judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). To be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible as evidence at trial. *See* Fed. R. Civ. P. 56(c). However, under Rule 56(c)(2), as amended in 2010, facts in support of or opposition to a motion for summary judgment need not be in admissible form; the requirement is that the party identify facts that could be put in admissible form. *See Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC–11–3415, 2013 WL 2919705, at *1 n. 1 (D. Md. June 12, 2013) ("Importantly, 'the objection [now] contemplated by the amended Rule is not that the material "has not" been submitted in admissible form, but that it "cannot" be.'" (quoting *Ridgell v. Astrue*, No. DKC–10–3280, 2012 WL 707008, at *9 (D. Md. March 2, 2012))).

In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Only factual disputes that "might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the factual dispute must be genuine to defeat a motion for summary judgment, in that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record. . . a court should not adopt that version."). It is the nonmoving party's burden to confront a motion for summary judgment with affirmative evidence to show that a genuine dispute of material fact exists.

*Anderson*, 477 U.S. at 256. A plaintiff nonmovant, "to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.*

## ANALYSIS

Mr. Lutz contends that a jury must decide the many disputes of fact and contested inferences that are material to the resolution of this case. LSI argues that Mr. Lutz cannot demonstrate a *prima facie* case of discrimination, and even if he can, LSI had a legitimate, non-discriminatory reason for his termination—Mr. Lutz'z poor work performance, which LSI asserts was not a pretext for discrimination. Since claims of racial discrimination under 42 U.S.C. § 1981 are evaluated under the same framework as claims under Title VII, *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017), I shall address Mr. Lutz's race and gender claims together, and separately address his claim of age discrimination under ADEA.

## I.     Race and Gender Discrimination

Title VII prohibits various forms of employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.* Section 1981 guarantees that people of all races shall have an equal right to "make and enforce contracts," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a), (b). The Supreme Court long ago held that this statute, like Title VII, authorizes suits alleging racial discrimination in private employment. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

An employee can pursue a discrimination claim using either "'direct or circumstantial evidence that [race or gender] was a motivating factor in the employer's adverse employment action' or [by] relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973)." *Swaso*, 698 F. App'x at 747 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007)). Under *McDonnell Douglas*, a plaintiff must first make out a *prima facie* case of discrimination. *Holland*, 487 F.3d at 214. To establish a *prima facie* case, a plaintiff must demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB–10–276, 2011 WL 4549177, at *5 (D. Md. Sept.28, 2011) (citing *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004)). If, upon review, the plaintiff "establishes a *prima facie* case of discrimination, the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for its conduct." *Smith v. Renal Treatment Ctrs.-Mid-Atl., Inc.*, No. RDB-16-3656, 2018 WL 950018, at *5 (D. Md. Feb. 20, 2018), *aff'd*, 736 F. App'x 68 (4th Cir. 2018). A successful showing here will then shift the burden back to the plaintiff "to prove that the employer's legitimate reason for the adverse action is merely a pretext." *Id.* Regardless the framework, "the focus is on whether a reasonable juror could conclude that illegal discrimination was a motivating factor in the employment decision." *EEOC v. Dimensions Healthcare Sys.*, No. PX-15-2342, 2016 WL 4593470, at *3 (D. Md. Sept. 2, 2016) (citing *Sawicki v. Morgan State Univ.*, No. WMN-03-1600, 2005 WL 5351448, at *6 (D. Md. Aug. 2, 2005), *aff'd*, 170 F. App'x 271 (4th Cir. 2006)).

Mr. Lutz contends that he has presented direct evidence of discriminatory animus, so the *McDonnell Douglas* burden-shifting approach does not apply. Pl.'s Resp. 19-20. "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action."

*Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*) (citations omitted)). "To avoid summary judgment, the plaintiff must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (citations omitted). Plaintiff's burden will be satisfied by "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch*, 435 F.3d at 520. The statement must be one that, "[i]f believed, . . . 'would prove the existence of a fact . . . without any inference or presumptions,'" such as an explicit statement "that an impermissible consideration was a determining factor." *Id.* (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir. 1995) (internal quotation marks omitted), *rev'd on other grounds*, 517 U.S. 308 (1996)).

Here, Mr. Lutz testified that during the August 25, 2020 meeting, at which time, all seven members of the LSI senior executive team were "white men," Mr. Angrick explicitly told him that the company had "a diversity problem," and the reason for his replacement by Ms. Murray, a younger African American woman, was to "improve the diversity profile of the company." Lutz Dep. 17; Lutz Decl. ¶ 6. Mr. Angrick denies making this statement. Angrick Dep. 73-74. Mr. Lutz also provided the declaration of Donna Tanenbaum, a professional associate, with whom he met two days after the termination meeting, and she testified that Mr. Lutz shared with her that he was asked to retire to solve a diversity problem. Tanenbaum Decl. ¶¶ 1-3.[7] While this declaration does

---

[7]     LSI has moved to strike this declaration. Def.'s Mot. Strike 10-11. LSI objects on the basis that Ms. Tanenbaum lacks personal knowledge to testify about Mr. Lutz's discussions with Mr. Angrick, and the conversation is inadmissible hearsay. *Id.* at 11. However, I accept the declaration, not for the truth of whether Mr. Angrick made the alleged statements, i.e., not hearsay, but as offered for the limited purpose of showing that Mr. Lutz reported his version of the meeting within a short time after it occurred. *See* Fed. R. Evid. 801. Further, in the likely event that at trial LSI attempts to impeach Mr. Lutz's credibility with respect to whether Mr. Angrick made the statements attributed to him by Mr. Lutz, then Ms. Tanenbaum's testimony about what Mr. Lutz told her may very well be admissible under Fed. R. Evid. 801(d)(1)(B), in

not provide evidence that the statement was made, it may help a jury evaluate Mr. Lutz's credibility. Fed. R. Evid. 801(d)(1)(B). In an email dated September 17, 2020 to LSI's general counsel discussing the proposed retirement and consulting agreement, Mr. Lutz stated: "Given the legal problems with forced retirement and replacing me on the basis of race, the Company should be motivated to resolve those problems amicably." Email 3, Pl.'s Ex. 22, ECF No. 34-23. Mr. Lutz also offered a report filed in early 2021 with the Securities and Exchange Commission, in which the Board reported that Ms. Murray "adds racial and gender diversity to the executive team." Schedule 14A Proxy Statement 3, Pl.'s Ex. 3, ECF No. 34-4.

If believed, Mr. Lutz's testimony about the reason given him by Mr. Angrick—"I want you to retire. I have a diversity problem. I need to improve the diversity profile of the company."—is sufficient to prove that impermissible considerations were a determining factor in Mr. Lutz's termination. Therefore, there is a genuine dispute of material fact which precludes summary judgment. Even without this direct evidence of an improper motive, there is sufficient evidence, viewed in the light most favorable to Mr. Lutz, to require that these claims be decided by a jury. LSI contends that Mr. Lutz was not adequately performing his job, but Mr. Lutz presents sufficient evidence to create a material dispute of fact about his performance, such that a jury could find that Mr. Lutz's performance was not deficient and LSI simply proffered examples of poor work performance as a pretext for terminating him. Mr. Lutz's race and gender discrimination claims must be given to a jury to decide. *See Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987) ("[S]ummary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense.").

---

which case it would not be hearsay, and Ms. Tanenbaum certainly has personal knowledge about what Mr. Lutz told her.

## II.    ADEA Claim

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a). A claim of age discrimination under the ADEA consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was performing his job satisfactorily, (3) the employer took adverse action against the plaintiff, and (4) the plaintiff's employer treated similarly situated employees outside the protected class more favorably. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC.*, 375 F.3d 288, 295 (4th Cir. 2004)); *Thoopsamoot v. Regional Services Center*, No. PWG-13-1663, 2014 WL 1120239, at *7 (D. Md. Mar. 19, 2014) (applying *Coleman* to age discrimination claim). "[F]or the fourth element, the plaintiff must demonstrate that he was replaced by or treated less favorably than someone 'substantially younger.'" *Cureton v. Cianbro Corp.*, Case No. JFM-06-2303 2006 WL 3537407, at *1 (D. Md. Nov. 22, 2006) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). "If both the plaintiff and the younger employee are over the age of 40, most courts have held that a gap of at least ten years is required to meet the "substantially younger" standard." *Houston v. Kirkland*, Case No. GJH-15-2507, 2016 WL 7176580, at *10 (D. Md. Dec. 7, 2016) (citations omitted).

To succeed on an age discrimination claim, the plaintiff must establish that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009); *Cole v. Family Dollar*, 811 F. App'x 168, 172 (4th Cir.  2020) ("[A] plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age or retaliation was 'the 'but-for' cause of the challenged employer decision.'"). "In other words, an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an

employer's decision; the employee must prove that the employer *would not have fired her* in the absence of age discrimination." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

An employee can make an ADEA claim using either direct or circumstantial evidence, using the *McDonnell Douglas* burden-shifting framework. *Id.* The burden to establish a *prima facie* case of age discrimination "is not onerous." *Id.* Here, as evidence that his age was a "but-for" cause of his termination, Mr. Lutz relies on Mr. Angrick's use of the term "retire." Pl.'s Resp. 3, 29. Although Mr. Lutz's successor was younger, she was not substantially younger, also being a member of the same protected class. Without more, this disputed statement is not sufficient to create a material dispute of fact that Mr. Lutz was terminated because of his age. *See Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); *Houston v. Kirkland*, Case No. GJH-15-2507, 2016 WL 7176580, at *10 (D. Md. 2016) ("Some comments or inquiries about retirement, without more, do not establish direct evidence of age-related discrimination.").

Accordingly, I shall grant summary judgment to Defendant on the ADEA claim. Under the circumstances, I did not find it necessary to resolve the issue that LSI raised regarding Nicholas Rozdilsky's declaration inasmuch as it was not relied upon in reaching the ruling. *See* Mot. Strike. Defendant's motion to strike is denied with regard to Donna Tanenbaum as discussed above and denied as moot with regard to Nicholas Rozdilsky.

**ORDER**

For the reasons stated in this Memorandum and Order, it is this 12th day of December

2022, hereby ORDERED that:

1.      Defendant's Motion for Summary Judgment, ECF No. 33, is GRANTED IN PART
        and DENIED IN PART:

        a.      Summary judgment is denied on Counts One and Three; the race and gender
                discrimination claims shall proceed to trial;

        b.      Summary judgment is granted on Count Two, the age discrimination claim
                under the ADEA.

2.      Defendant's Motion to Strike, ECF No. 39 is DENIED with regard to the Donna
        Tanenbaum Declaration and DENIED AS MOOT with regard to the Nicholas
        Rozdilsky Declaration.

3.      This case shall be reassigned, and a status call will be scheduled to discuss pre-trial
        and trial proceedings.


                                        _____/S/_____
                                        Paul W. Grimm
                                        Senior United States District Judge